IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| JIMMIE PEARSON *et. al.*<br>For themselves and on behalf of all similarly situated individuals,<br><br>　　　　　　　　Plaintiffs,<br><br>  - Versus -<br><br>PROFESSIONAL 50 STATES<br>PROTECTION, LLC.*et. al.*<br><br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 1:09-cv-03232-JKB<br>)<br>)<br>)<br>)<br>) |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

The Parties submit this Joint Motion for Approval of Settlement in accordance with the Court's April 4, 2012 Order and in support of the compromise of this controversy pursuant to the Settlement Agreement. The Parties state as follows:

### III.   THE PROPOSED AGREEMENT IS FAIR AND REASONABLE.

This Court may approve the Settlement Agreement upon a determination that it is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions. *See, e.g., Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982). For the reasons set forth below, the parties submit that the terms of the Settlement Agreement are fair, adequate, and reasonable and confer a substantial benefit upon Plaintiffs. *See* Settlement Agreement attached as Exhibit 1.

A. **Back Pay Liability.**

Plaintiffs based their wage claims on the contention that Defendants willfully failed to pay them a premium for overtime hours worked. Defendants counter that the decision not to pay the overtime premium was not willful. Investigations conducted by the DOL have been interpreted by both parties to support their positions.

B. **Discovery Disputes.**

The Parties engaged in discovery, both formal and informal, and engaged in two depositions, individual defendant and corporate designee. Numerous payroll documents were reviewed. The nature of the documentation was such that the Parties could not draw definitive conclusions solely from these documents. While expert forensic accountants were originally consulted their offered services were cost prohibitive in the context of this controversy. As a result further review and extrapolation from the DOL reports and the payroll and time records that were turned-over ultimately became the bases for the negotiated settlement. The discovery disputes in this controversy were many as is demonstrated by the Court's docket.

C. **Litigation Expense and Payment of Judgment.**

One significant consideration facing Plaintiffs here was Defendants' ability to pay the expense of protracted litigation and a potential maximum award following a trial on the merits. These concerns were only exacerbated when during settlement negotiations it became obvious through Defendants' representations that their ability to pay a judgment and the full costs of litigation was highly improbable. Assuming *arguendo* that Plaintiffs were ultimately able to obtain all that they sought in their Complaint, the fact that they would have to endure a protracted effort to recover any such judgment was opposite to their interest of a more expedited resolution of the lawsuit.

### D. The Settlement Sum.

The Parties compromised and Defendants agreed to pay to plaintiffs $60,000.00. *See* Distribution Chart, attached as Exhibit 2. The distribution is as follows: $19,000 to the Plaintiffs broken down to $200 for the opt-ins that worked for Defendant less than six months, $300 to those that worked more than six months, $800 to named Plaintiff Charles Streeter and $2,500 to the other named Plaintiff Jimmie Pearson (Mr. Pearson has maintained that he was never reimbursed for a pay-check loan deduction whereas Mr. Streeter was). The nature of the claims in this controversy and the fact that the settlement covers a 3-year look back-period and that in fact prior payments had been made to many individuals as a result of the DOL investigation, coupled with the uncertainty of litigation and the economic wellbeing of defendants millitats strongly in favor of the settlement of this controversy. By way of comparison, the outcome in this controversy is far more favorable than the outcome of Lynn's Food Stores, which recognized a role for less-than-full-value compromise in the FLSA settlement process. *See, e.g., Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at 13-17% of maximum recovery).

### E. Prospective Wage Benefits.

In addition to the two incentives identified above, the Plaintiffs have altered the Defendants' payroll practices. By initiating this litigation, and by bringing about changes in the Defendants' payroll practices, Plaintiffs have accorded a benefit to the American public by securing the wages for a group of laborers working in the security protections services industry. What's more, Plaintiffs have secured increased wage benefits for Defendants current and former employees. While those amounts cannot be calculated with certainty, an estimation of the benefits can be made by looking at scope of the class in this action. Thus, should Defendants employ an amount of security guards equal to those who opted-in to this controversy over the

next three-years a significant prospective wage benefit will be accorded to them as a result of this litigation that is at least equal to the benefits accorded under the Settlement Agreement. *See Smile et al., v. Comcast* et al., 1:07-cv-03231 (E.D. Ill. 2009) (recognizing the value of prospective benefits in settlement).

### F.   Compromise of Attorneys' Fees.

From the outset of this litigation, Plaintiffs' Counsel provided quarterly statements to Defendants identifying their loadstar in this controversy. Thus, even prior to the initiation of settlement discussions, Defendants had been presented with a separate accounting of Plaintiffs' attorneys' fees. Nonetheless, Plaintiffs' Counsel reduced their fee to $41,000.00 which includes costs for this litigation.

It is long established that in FLSA cases, attorneys' fee awards are not based on a percentage of the award but upon the loadstar. *See Bonnette v. California Health and Welfare,* 704 F.2d 14665, 1473 (9th Cir. 1983) (awarding $100,000.00 in attorneys' fees although damage award was only $18,455.00); see also *Moore v. Gupta et al.,* 2010 WL 4683813 (M. D. Fla.) (agreed upon attorneys' fees and costs were never (and are not) a percentage of any total recovery in this case such that there is no correlation between the amount of monetary consideration being paid to Plaintiff and the amount of attorneys' fees and costs being paid by Defendant on Plaintiff's behalf). When all factors are considered, the quarterly billing statements, the successful opt-in rate, the back-wages and prospective value, the attorneys' fees sought by Plaintiffs' Counsel are reasonable.

Respectfully submitted,

| | |
|---|---|
| /s/ | /s/ |
| Michael J. Snider, Esq., #24695 | Andreas N. Akaras, Esq., #14290 |
| Allan E. Feldman, Esq., #17092 | The Akaras Law Offices |
| Snider & Associates, LLC | 4423 Lehigh Road, #308 |
| 104 Church Lane, Suite 100 | College Park, MD 20740 |
| Baltimore, MD 21208 | 301-864-7763 phone |
| 410-653-9060 | akaras@akaraslaw.com |
| 410-653-9061 fax | |
| mike@sniderlaw.com email | Attorneys for Plaintiff |

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2012, a true and correct copy of the foregoing document was filed electronically. Notice of the filing was sent by operation of the Court's electronic filing system to all counsel of record. Parties may access this filing through the Court's electronic filing system.

/s/
Allan E. Feldman, Esq.